## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE: ) | |
| ) | Case No.: 15-23947 |
| LINCOLN GILL ) | (Chapter 13 Case) |
| ANDREA UNDERWOOD GILL ) | |
|    Debtors ) | |
| _____ ) | |
| ) | |
| CASSANDRA GILL ) | Adversary No.: |
| 8510 Caswell Place ) | |
| New Carrollton, MD  20784 ) | |
|    **Plaintiff** ) | |
| v. ) | |
| ) | |
| LINCOLN GILL ) | |
| ANDREA UNDERWOOD GILL ) | |
| 13600 Old Marlboro Pike ) | |
| Upper Marlboro, MD  20772 ) | |
| ) | |
| -AND- ) | |
| ) | |
| SETERUS, INC. as authorized ) | |
| Subservicer for Federal National ) | |
| Mortgage Association ) | |
| ) | |
| **SERVE:**  Jeff Johnson, President ) | |
| 14523 SW Millikan Way, Suite 200 ) | |
| Beaverton, OR  97005 ) | |
| ) | |
| **SERVE:**  Matthew George Kuspa, Esq. ) | |
| BWW Law Group, LLC ) | |
| 6003 Executive Blvd., Suite 101 ) | |
| Rockville, MD  20852 ) | |
| ) | |
| -AND- ) | |
| ) | |
| CITIMORTGAGE, INC. ) | |
| ) | |
| **SERVE:**  Paul Ince, CFO/ Daniel P. ) | |
|          Hoffman, Sr. VP ) | |
| 4740 121st St. ) | |
| Urbandale, IA  63368 ) | |
| ) | |
|    **Defendants** ) | |

**COMPLAINT FOR DECLARATORY ACTION TO DETERMINE SCOPE, VALIDITY AND PRIORITY OF LIEN OF PLAINTIFF PURSUANT TO 28 U.S.C §§ 2201-2202, AND FOR EQUITABLE SUBORDINATION PURSUANT TO 11 U.S.C § 510(c)**

CASSANDRA GILL (the "Plaintiff" or "Creditor Cassandra"), by and through undersigned counsel, John D. Burns, Esq. and The Burns Law Firm, LLC, files Complaint For Declaratory Action To Determine Scope, Validity And Priority Of Lien Of Plaintiff Pursuant to 28 U.S.C. §§ 2201-2202, And For Equitable Subordination Pursuant to 11 U.S. C. § 510(c) (the "Complaint"), and in support states as follows:

**JURISDICTION AND VENUE:**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 (b) and 1334(a), (b) and (e)(1), 1367, and 2201-2202. The Plaintiff consents to the entry of final Orders by this Bankruptcy Court.

2. This adversary is a core proceeding as defined by 28 U.S.C. § 157(b)(2).

3. Venue is proper pursuant to 28 U.S.C. § 1409.

**PARTIES:**

4. CASSANDRA GILL (the "Plaintiff" or "Creditor Cassandra"), is a the ex-wife of Lincoln Gill and resides at 8510 Caswell Place, New Carrollton, MD 20784. Creditor Cassandra is a creditor in this Chapter 13 case.

5. LINCOLN GILL ("Debtor Lincoln") and ANDREA UNDERWOOD GILL ("Andrea Gill") (collectively, the "Debtors"), reside at 13600 Old Marlboro Pike, Upper Marlboro, Maryland, and are the debtors in this Chapter 13 case. Debtor Lincoln also was the sole debtor in a prior bankruptcy case detailed more particularly hereinbelow.

6. SETERUS, INC. ("Seterus"), is a loan servicing company which is the authorized subservicer for Federal National Mortgage Association ("Seterus"). Seterus is the

current servicer for Citimortgage, Inc. ("Citimortgage"), which is the holder of a note secured by a refinance deed of trust which is detailed more particularly hereinbelow.  Both Seterus and Citimortgage (collectively, the "Lender") conduct business within the State of Maryland and are servicers and/or mortgage lenders.

7.      Timothy P. Branigan (the "2004 Trustee") is the appointed Trustee in Debtor Lincoln's prior bankruptcy action.

8.      Nancy Spencer Grigsby (the "2015 Trustee") is the appointed Trustee in this bankruptcy action.

**FACTS COMMON TO ALL COUNTS:**

9.      On or about October 7, 2015, Debtors filed a voluntary Chapter 13 petition in the United States Bankruptcy Court for the District of Maryland (the "Court") which is Case No. 15-23947 (the "2015 Bankruptcy").

10.     Debtor Lincoln filed for dissolution of marriage to Creditor Cassandra on or about May 13, 2003 in the Circuit Court for Prince George's County, Maryland [Case No. CAD03-09960] (the "State Action").  A copy of the State Action docket is attached hereto as ***Exhibit 1*** and is made a part hereof.  On or about April 12, 2004, Creditor Cassandra filed an emergency motion in the State Action to enforce a use and possession order which Debtor Gill was allegedly violating.  A hearing was held on the emergency motion, and a show cause hearing was set for April 23, 2004.  Debtor Lincoln appeared at the show cause hearing on April 23, 2004.  A few days later, Debtor Lincoln filed a petition for bankruptcy on or about April 27, 2004, in the Bankruptcy Court for the District of Maryland [Case No. 04-20368] (the "2004 Bankruptcy").

11. Although there were ongoing alimony and child support matters in the State Action at the time of filing, Debtor Lincoln did not include Creditor Cassandra as a possible creditor or interested party in the 2004 Bankruptcy. *See* the 2004 Bankruptcy Creditor Matrix, a copy of which is attached hereto as **Exhibit 2.** He did, however, appear in the State Action at a May 11, 2004 contested hearing before a Domestic Relations Master at which matters regarding alimony, child support, and property division for domestic support purposes were determined, including a recommendation by the Equity Master for entry of a $25,000 judgment against Debtor Lincoln.

12. On June 8, 2004, the State Court entered a judgment for the May 11, 2004 hearing. A copy of the June 8, 2004 judgment (the "Judgment"), with inclusion of the May 2015 renewal of judgment, is attached hereto as **Exhibit 3** and is made a part hereof. The Judgment adopts against Debtor Lincoln prior State Court orders and requires him to comply with Creditor Cassandra's use of the family home in which she resided with their minor child. The Judgment also required he pay $25,000 to Creditor Cassandra.

13. The $25,000 award in the Judgment is related to non-dischargeable domestic support matters. By all terms of the State Action file, it and precedent orders actually was intended to be in the nature of maintenance and support for Creditor Cassandra with her minor child such that they would have housing.

14. At no time during the May 11, 2004 hearing or at any other time while appearing in the State Action proceedings during the pendency of the 2004 Bankruptcy did Debtor Lincoln advise the State Court that he had filed for bankruptcy protection on April 27, 2004, nor did he file a Suggestion of Stay in the State Action in accordance with the Local Rules 2072-1.

15. At no time between the filing of the petition on April 27, 2004, and the dismissal of the case on March 29, 2007, did Debtor Lincoln ever provide Creditor Cassandra with notice of the 2004 Bankruptcy. Indeed, she was omitted from the matrix and schedules.

16. Debtor Lincoln's 2004 Bankruptcy Chapter 13 Plan [Case No. 04-20368, Dkt. 4] was confirmed on September 23, 2004 [Case No. 04-20368, Dkt. 14]. The 2004 Bankruptcy Chapter 13 Plan failed to address any domestic support obligations including but not limited to child support payments which had been ordered by the time of confirmation, and fails to address the claim Creditor Cassandra in any manner. Further, the 2004 Trustee's Final Report and Accounting reflects no payments were made through the Chapter 13 Plan for any domestic support obligations including but not limited to child support [Case No. 04-20368, Dkt. 51]. These facts indicate that the Chapter 2004 Trustee may have been misled regarding the support obligations and the need to include Creditor Cassandra as a creditor for notice in the 2004 Bankruptcy.

17. On November 4, 2005, Debtor Lincoln, who had counsel of record in bankruptcy, filed a *pro se* motion in the 2004 Bankruptcy requesting permission to refinance the mortgage on 4209 91st Place, Lanham, Maryland 20706 (the "Property"). [Case No. 04-20368, Dkt. 27]. At the time Debtor Lincoln filed his motion for permission to refinance, he knew there had been entry of a $25,000 judgment against him on June 8, 2004.

18. Debtor Lincoln knew or should have known the Judgment was an actual or possible lien on the Property.

19. As of November 4, 2005, the Judgment already was recorded in the Public Records of Prince George's County, putting all future lenders on notice of the lien on the Property.

20. Neither the Court nor the 2004 Trustee, however, were notified by Debtor Lincoln of the Judgment, the possible cloud on title, or a possible violation of the bankruptcy stay. On December 6, 2005, the Court, unaware of the existence of the Judgment, entered an order approving the motion for refinancing and requiring the settlement agent at the future time of closing of the refinance transaction forward funds and the executed HUD-1 settlement statement to the 2004 Trustee. [Case No. 04-20368, Dkt. 32].

21. Also on December 6, 2005, Debtor Lincoln added Andrea Gill to the deed and title of the Property without Court authorization in violation of 11 U.S.C. § 363.

22. On March 6, 2006, Debtor Lincoln filed a second *pro se* motion in the 2004 Bankruptcy requesting permission to add Andrea Gill, the co-debtor in the current bankruptcy action, to the deed and title of the Property. Debtor Lincoln intentionally misled the Court in his motion to transfer ownership of property of the estate by failing to state he already had transferred the Property, and instead asking that Andrea Gill "be added to the deed and title" since the title company needed "permission to add Andrea Gill to the title/deed in order to proceed further with the refinance." [Case No. 04-20368, Dkt. 34]. The lender filed an opposition to the motion to add Andrea Gill to the deed. [Case No. 04-20368, Dkt 37]. The Court denied the motion to transfer ownership on March 30, 2006, after Debtor Lincoln failed to appear for his own requested hearing. [Case No. 04-20368, Dkt. 39].

23. Both before and after the Court's Order denying permission to transfer ownership of the Property, Debtor Lincoln knowingly failed to disclose from the Court and 2004 Trustee that he had improperly transferred the Property.

24. It is likely Debtor Lincoln failed to appear at the March 30, 2006 hearing to avoid the conundrum of either perjuring himself or explaining the unauthorized antecedent transfer of property of the estate.

25. In January 2007, Debtor Lincoln and Andrea Gill together refinanced the Property through Fidelity Mortgage while the 2004 Bankruptcy was still active. A copy of the refinance Deed of Trust is attached hereto as *Exhibit 4* and is made a part hereof.

26. Debtor Lincoln's deception in adding Andrea Gill to title of the Property was caught by the 2004 Trustee shortly after the refinancing occurred. As a result, the 2004 Trustee filed a motion to dismiss the 2004 Bankruptcy on or about February 26, 2007 [Case No. 04-20368, Dkt 47] based on the improper transfer of estate property without Court authorization in violation of 11 U.S.C. § 363, and the case was dismissed without opposition on or about March 29, 2007. [Case No. 04-20368, Dkt. 48].

27. Debtors later refinanced the Property in November 2007 with Worldwide Financial Resources, which endorsed the loan documents to Citimortgage. A copy of the loan documents including Note, Allonge, and Refinance Deed of Trust is attached hereto as *Exhibit 5* and is made a part hereof. Based on Schedule D filed in the 2015 Bankruptcy [Dkt. 1] as well as the proof of claim filed by Seterus [Cl. Dkt. 15], Seterus and CitiMortgage are the creditor for the loan as of the filing of the 2015 Bankruptcy.

28. The prior recording of the Judgment in the public records of Prince George's County, Maryland put Fidelity Mortgage on notice of the possible cloud on title at the time it approved the refinancing and recorded its refinance Deed of Trust. Based on the public records of Prince George's County, Maryland at the time of the refinancing, Fidelity Mortgage's refinance Deed of Trust had second priority status to Creditor Cassandra's recorded judgment.

Further, had Fidelity Mortgage fully reviewed the 2004 Bankruptcy file to ensure no title or priority issues, it would have found Creditor Cassandra, the judgment holder, had not been provided notice of the 2004 bankruptcy.  More importantly, by reviewing the 2004 Bankruptcy file Fidelity Mortgage would have become aware of the fact that Andrea Gill was on title of the Property at the time of the refinancing in violation of a Court order and that her interest in the Property was allegedly inferior to Creditor Cassandra's judgment lien.

29. The prior recording of the Judgment in the public records of Prince George's County, Maryland put the current Lender on notice of the possible cloud on title at the time it recorded its Refinance Deed of Trust.  Based on the public records of Prince George's County, Maryland at the time of the refinancing, the Lender's Refinance Deed of Trust had second priority status to Creditor Cassandra's recorded judgment.  Further, had the Lender fully reviewed the 2004 Bankruptcy file to ensure no title or priority issues, it would have found Creditor Cassandra, the judgment holder, had not been provided notice of the 2004 bankruptcy.  More importantly, by reviewing the 2004 Bankruptcy file the Lender would have become aware of the fact that Andrea Gill was on title of the Property in violation of a Court order and that her interest in the Property was allegedly inferior to Creditor Cassandra's judgment lien.

30. Creditor Cassandra's interest in the Property is superior to Andrea Gill's interest in the Property.

31. When Debtors filed the 2015 Bankruptcy, they listed Creditor Cassandra's Judgment on Schedule F as an unsecured nonpriority claim for $52,580.  [Dkt. 1].  When Creditor Cassandra received notice of the filing of the 2015 Bankruptcy, she filed a proof of claim [Cl. Dkt. 5] stating that the debt was $53,007.30 and fully secured by the Property.

Creditor Cassandra attached to her proof of claim a copy of the Judgment and a copy of the judgment renewal.[1]

32.  Creditor Cassandra first became aware of the 2004 Bankruptcy when the Debtors filed their Objection to her proof of claim. [Dkt. 26]. Prior to the 2015 Bankruptcy, Creditor Cassandra had neither actual nor constructive notice of the 2004 Bankruptcy. Had Creditor Cassandra been aware of the 2004 Bankruptcy when it was pending, she would have either filed a motion for relief from stay in the 2004 Bankruptcy or requested that the Bankruptcy Court adjudicate the issues between Debtor Lincoln and herself.

33.  Debtor Lincoln's intentionally failed to notify Creditor Cassandra or the State Court of the 2004 Bankruptcy while continuing to proceed forward in the State Action in order to prevent Creditor Cassandra from exercising her rights in the 2004 Bankruptcy.

34.  In the 2015 Bankruptcy, Debtors filed a Chapter 13 Plan for which confirmation was denied in July 2016 with leave to amend by November 4, 2016 [Dkt. 34], the penalty being dismissal of the 2015 Bankruptcy if an amended Plan is not timely filed. Debtors also were put on notice in July 2015 that Creditor Cassandra would be filing this adversary. As of November 5, 2016, Debtors have failed to file an Amended Chapter 13 Plan or any related pleading in the 2015 Bankruptcy.

35.  By vigorously asserting his interests in the State Action two weeks after filing the 2004 Bankruptcy while failing to notify both his opponent, Creditor Cassandra, and the State Court of the filed bankruptcy petition, Debtor Lincoln used the 2004 Bankruptcy as a weapon and acted with intent to "game the system." Based on the show cause hearing in the State Action set on April 23, 2004, Debtor Lincoln was on notice that his manipulations might

---

[1] Creditor Cassandra will be filing an amended proof of claim. She omitted identifying the Judgment as a domestic support obligation when filing Proof of Claim Dkt. 5.

lead to a judgment against him. He then filed the 2004 Bankruptcy on April 27, 2004, and proceeded to litigate his rights on May 11, 2004 in case he prevailed, believing he could later claim any adverse judgment essentially did not count. Such conduct is a clear abuse of the system and an effort to get a head start, rather than a fresh start. Debtor Lincoln's misconduct in the 2004 Bankruptcy, as detailed hereinabove, further reflects his disregard for the authority of the courts. Debtors' failure to file a timely amended Plan in the 2015 Bankruptcy also is evidence of unclean hands.

36. The 2004 Bankruptcy should be reopened in order to nullify the automatic stay as to the Judgment.

37. Creditor Cassandra has incurred attorney's fees and costs litigating domestic support matters and the related collection of the Judgment. Such attorney's fees should be paid by Debtors and are non-dischargeable under 11 U.S.C. § 523(a)(5). *See In re Blaemire,* 229 B.R. 665 (D. Md. 1999); *see also McNeil v. Drazin*, 499 B.R. 484 (D. Md. 2013).

### COUNT I: DECLARATORY JUDGMENT
### (11 U.S.C. §§ 105(a), 541(a); 28 U.S.C. §§ 2201-2202)

38. Plaintiff incorporates all prior averments as though more fully set forth herein.

39. Creditor Cassandra's Judgment is a valid judgment which was properly recorded in the public records of Prince George's County, Maryland and enrolled as a secured lien on the Property on or about June 8, 2004.

40. At the time of the transfer of the Property from Debtor Lincoln to himself and Andrea Gill in December 2006, Creditor Cassandra held a perfected security interest in the Property by virtue of her recorded Judgment.

41.     When the Debtors refinanced the Property in 2007, Creditor Cassandra held a perfected security interest in the Property by virtue of her recorded Judgment.

42.     Creditor Cassandra's interest in the Property is superior to the interest of Andrea Gill.

43.     Creditor Cassandra's interest in the Property is superior to the interest of the Lender.

44.     Accordingly, the Court may issue a declaratory judgment as to the respective interests of the parties herein to and in the Property. 28 U.S.C. §§ 2201-2202. The Court should declare that Plaintiff's interest is a perfected, secured first priority interest, which is superior to the rights of Andrea Gill and the Lender. The declaration is necessary and appropriate to the provisions of Title 11 pursuant to 11 U.S.C. § 105.

WHEREFORE, the Plaintiff hereby requests this Court enter an Order:

(i)     Granting Count I;

(ii)    Granting a declaratory judgment finding and concluding that Plaintiff holds a secured claim against the Property which is superior in interest to any interests held by Andrea Gill, Seterus and Citimortgage;

(iii)   Granting attorney's fees and costs; and

(iv)    Granting such other and further relief as equity and justice may require.

### COUNT II: EQUITABLE SUBORDINATION
### (11 U.S.C. §§ 105(a), 510(c))

45.     Plaintiff incorporates all prior averments as though more fully set forth herein.

46.     Plaintiff pleads Count II in the alternative to Count I.

47. At the time of the refinancing of the loan on the Property, the Lender was aware of the 2004 Bankruptcy.

48. At the time of the refinancing of the loan on the Property, the Lender was on notice of Creditor Cassandra's recorded Judgment in the public records of Prince George's County, Maryland.

49. The Lender knew or should have known from the 2004 Bankruptcy filings that Creditor Cassandra had no notice of the 2004 Bankruptcy.

50. The Lender knew or should have known from the 2004 Bankruptcy filings had been improperly added to title of the Property during the 2004 Bankruptcy.

51. The Lender chose to proceed forward with the transaction and recordation of its Refinance Deed of Trust, with full knowledge of the Judgment, lack of notice to Creditor Cassandra in the 2004 Bankruptcy, and issue regarding Andrea Gill's ownership.

52. As a result, the Lender has unclean hands.

53. Debtor Lincoln has acted with unclean hands as more particularly described hereinabove.

54. Andrea Gill was not a bona fide purchaser of the Property.

55. Andrea Gill was complicit in Debtor Lincoln's actions. She knew or should have known she was improperly added to title of the Property when she first executed refinance documents as a title owner of the Property in January 2007.

56. Section 510(c) of Title 11 provides in relevant part that the Court may "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest." 11 U.S.C. § 510(c)(1).

57. Inequitable conduct by the Lender warrants a subordination of the Lender's claim if allowed in any part below that of Plaintiff's claim and interest in the Property. A bankruptcy court has within its equitable powers to subordinate a claim, and the statute itself includes subordination below allowed interests. *See, In re Official Committee of Unsecured*, 453 F.3d 225 (4th Cir. 2006).

WHEREFORE, the Plaintiff hereby requests this Court enter an Order:

(i) Granting Count II;

(ii) Subordinating the treatment of the claim of Seterus [Cl. Dkt. 15] below that of Plaintiff's claim [Cl. Dkt. 5] as to be amended;

(iii) Subordinating Andrea Gill's interest in the Property below that of Plaintiff's claim; and

(iv) Granting such other and further relief as equity and justice may require.

Respectfully submitted,

THE BURNS LAW FIRM, LLC
---------/s/ John D. Burns---------

_____
John D. Burns, Esq. (#22777)
The Burns Law Firm, LLC
6303 Ivy Lane, Suite 102
Greenbelt, Maryland  20770
*ecf@burnsbankruptcyfirm.com*
(301) 441-8780
Counsel for Plaintiff, Cassandra Gill

I HEREBY CERTIFY THAT THE FOREGOING
FACTS ARE TRUE AND CORRECT UNDER THE PENALTY
OF PERJURY.
---------/S/ CG------------------
_____
Cassandra Gill